IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THE NORTHWEST PUBLIC
COMMUNICATIONS COUNCIL,
*ex rel* State of Oregon,

      Plaintiff,

v.

QWEST CORPORATION,

      Defendant.

3:12-CV-121-BR

OPINION AND ORDER

**FRANKLIN G. PATRICK**
P.O. Box 231119
Portland, OR 97281
(503) 245-2828

      Attorney for Plaintiffs

**LAWRENCE H. REICHMAN**
Perkins Coie, LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
(503) 727-2019

      Attorneys for Defendant

1  -  OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#17) to Remand by Plaintiff Relator Northwest Public Communications Council (NPCC), Defendant Qwest Corporation's Motion (#14) to Dismiss for Failure to State a Claim, and Qwest's Motion (#22) to Strike NPCC's Response (#20) to Qwest's Motion to Dismiss.  For the reasons that follow, the Court **DENIES** NPCC's Motion (#17) to Remand, **GRANTS** Qwest's Motion (#14) to Dismiss, and **DENIES as moot** Qwest's Motion (#22) to Strike.


<u>**BACKGROUND**</u>

NPCC's Complaint (#1) concerns a long-running dispute between NPCC and its members against Qwest over an administrative process that, *inter alia*, served to set payphone tariff rates in the State of Oregon.  This matter represents the third time this and related disputes have come before this Court.  *See NPCC v. Qwest Corp.*, 3:09-CV-1351-BR (*NPCC I*); *NPCC v. Oregon Pub. Util. Comm'n*, 3:10-CV-685-BR.  The Court dismissed both prior actions.

**I.   Regulatory Background.**

In 1996 Congress amended the Federal Communications Act (FCA) of 1934 in part to improve competition in the telecommunications industry in the wake of the breakup of the former AT&T into Bell Operating Companies (BOCs).  *See* 47 U.S.C. § 151, *et seq*.  In particular, Congress enacted §§ 201 and 276 of

2   -   OPINION AND ORDER

the FCA to promote greater competition among payphone service providers (PSPs) and to prevent Local Exchange Carriers (LECs) that were often owners of payphone lines and payphone service providers from discriminating against other PSPs in favor of their own payphone services. In *Davel Communications, Inc. v. Qwest Corporation*, PSPs disputed certain payphone service tariffs charged by Qwest. 460 F.3d 1075 (9th Cir. 2006). In *Davel* the Ninth Circuit set out the following regulatory background that summarizes the numerous administrative orders issued by the Federal Communications Commission (FCC) in its implementation of the Act:

> Chapter 5 of the Federal Communications Act of 1934 as amended by the 1996 Act regulates the telecommunications industry. 47 U.S.C. § 151 *et seq.* As a general matter, the Federal Communications Act requires common carriers subject to its provisions to charge only just and reasonable rates, *id.* § 201, and to file their rates for their services with the FCC or, in some cases, with state agencies. *Id.* § 203. As part of the 1996 Act's general focus on improving the competitiveness of markets for telecommunications services, § 276 substantially modified the regulatory regime governing the payphone industry by providing, in general terms, that dominant carriers may not subsidize their payphone services from their other telecommunications operations and may not "prefer or discriminate in favor of [their] payphone service[s]" in the rates they charge to competitors. *Id.* § 276(a). The 1996 Act directs the FCC to issue regulations implementing these provisions, specifying in some detail the mandatory contents of the regulations. *Id.* § 276(b).

Pursuant to this directive, the FCC adopted regulations requiring local exchange carriers such as Qwest to set payphone service rates and "unbundled features" rates, including rates for fraud protection, according to the FCC's "new services test" (sometimes "NST").  The new services test requires that rates for those telecommunications services to which it applies be based on the actual cost of providing the service, plus a reasonable amount of the service provider's overhead costs.  The FCC's regulations required local exchange carriers to develop rates for the use of public access lines by intrastate payphone service providers that were compliant with the new services test.  The rates were to be submitted to the utility commissions in the states in the local exchange carriers' territory, which would review and "file" (*i.e.*, approve) the rates.  *See In re Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, Report and Order, FCC 96-388, 11 F.C.C.R. 20,541 (Sept. 20, 1996); *In re Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, Order on Reconsideration*, FCC 96-439, 11 F.C.C.R. 21,233 (Nov. 8, 1996) ¶ 163 ("Order on Recons.")(collectively "Payphone Orders").  Also pursuant to the regulations, local exchange carriers were required to file their "unbundled features" rates with both the state commissions and the FCC for approval.  *Order on Recons*.  ¶ 163.  The FCC required the local exchange carriers to file the new tariffs for both kinds of rates by January 15, 1997, with an effective date no later than April 15, 1997.  *Id*.

In addition, the Payphone Orders required interexchange carriers, mainly long distance telephone service providers, to pay "dial-around compensation" to payphone service providers, including Qwest, for calls carried on the carrier's lines which

originated from one of the provider's pay
telephones.  If, however, the payphone
service provider was also an incumbent local
exchange carrier, as was Qwest, the Payphone
Orders required full compliance with the new
tariff filing requirements, including the
filing of cost-based public access line rates
and fraud protection rates, before the local
exchange carrier could begin collecting
dial-around compensation.

* * *

On April 15, 1997, the FCC issued an
order granting a limited waiver of the new
services test rate-filing requirement.  *In
re Implementation of the Pay Telephone
Reclassification and Compensation Provisions
of the Telecommunications Act of 1996*, *Order*,
DA 97-805, 12 F.C.C.R. 21,370 (Apr. 15, 1997)
("Waiver Order").  Specifically, the Waiver
Order granted an extension until May 19,
1997, for filing intrastate payphone service
rates compliant with the new services test,
while at the same time permitting incumbent
local exchange carriers to begin collecting
dial-around compensation as of April 15,
1997.  *Id.* ¶ 2.  The Waiver Order stated that
the existing rates would continue in effect
from April 15, 1997, until the new, compliant
rates became effective ("the waiver period").
The NST-compliant rates were to be filed with
state utility commissions, which were
required to act on the filed rates "within a
reasonable time."  *Id.* ¶ 19 n.60; *see also
id.* ¶¶ 2, 18-19, 25.  If a local exchange
carrier relied on the waiver, it was required
to reimburse its customers" from April 15,
1997 in situations where the newly [filed]
rates, when effective, are lower than the
existing [filed] rates."  *Id.* ¶¶ 2, 20, 25.
The order emphasized that the waiver was
"limited" and "of brief duration."  *Id.*
¶¶ 21, 23.

460 F.3d at 1081-83 (footnotes omitted).

## II.   Administrative Background.

NPCC is a regional trade organization that represents companies providing public payphone services.  Some of its members have purchased payphone services from Qwest and are generally known as PSPs.

Qwest is a BOC as defined in 47 U.S.C. § 153 and also a regulated LEC that owned nearly 80% of the payphone lines in Oregon until it sold its payphone services business in 2004.

NPCC and its members have been pursuing this matter at the administrative level with PUC for over a decade.  At the heart of the dispute at the state level are refunds that NPCC and its members are seeking pursuant to FCC Orders issued in the mid-1990s that include the April 15, 1997, Waiver Order.  The relevant administrative history includes (1) the history of Qwest's payphone tariff rates for Public Access Lines (PALs) and Fraud Protection services (CustomNet) that Qwest charged and filed with PUC and (2) the procedural history of NPCC's claim filed with PUC in May 2001 (Docket DR 26/UC 600)(Refund Case) against Qwest for refunds of tariffs paid to Qwest allegedly in excess of and not compliant with the federal New Services Test (NST).

### A.   Qwest's Oregon Payphone Tariff Rates.

In September 2001 PUC concluded an administrative process begun by Qwest to set tariff rates in accordance with the FCA

(Docket UT 125)(Rate Case).  The Rate Case facilitated the design of the tariffs, and PUC ultimately adopted certain Qwest tariff rates for payphone services.  In March 2002 NPCC appealed PUC's final rate determination to the Marion County Circuit Court and subsequently appealed that court's decision to uphold the rates to the Oregon Court of Appeals in October 2002.  Qwest contended those reductions were compliant with the FCC orders that the rates were to be set in accordance with the NST.  PUC accepted Qwest's rate filings and made the rates effective for PAL on March 17, 2003, and for CustomNet on August 28, 2003.

In November 2004 the Oregon Court of Appeals issued its decision in *Northwest Public Communications Council v. Public Utilities Commission of Oregon* in which it reversed the Marion County Circuit Court, remanded PUC's initial rate-setting decision, and required PUC to reconsider the payphone services rates in light of the recent FCC orders that included the Wisconsin Order clarifying the method for applying the NST.  196 Or. App. 94 (2004).

On October 15, 2007, Qwest and NPCC stipulated the PAL and CustomNet rates submitted by Qwest and approved by PUC in 2003 were NST-compliant.

On November 15, 2007, PUC adopted that stipulation and confirmed Qwest's compliance with the NST for PAL and CustomNet rates.

**B.    The Refund Case.**

In May 2001 NPCC filed a complaint with PUC seeking refunds of PAL rates that NPCC allegedly paid in excess of the NST-compliant rates.  In 2004 and 2005 the parties filed cross-motions for summary judgment with PUC on the issue of Qwest's refund liability for PAL rates.  In March 2005 an ALJ held the case in abeyance with the hope that the FCC would issue additional guidance as to the Waiver Order application.  Because that guidance was not forthcoming, NPCC moved to lift the abeyance, PUC granted NPCC's motion, and PUC reactivated the case on February 5, 2009.  NPCC then moved to amend its complaint to add its CustomNet rate claims to its claims for PAL refunds.  In May 2009 PUC denied NPCC's motion to add the CustomNet claims partly on the ground that those claims were barred by the statute of limitations because the CustomNet rate claims did not relate back to the claim for PAL refunds that NPCC had originally asserted.  On November 16, 2009, NPCC again moved to amend its complaint to add its claims for CustomNet refunds.  On February 1, 2010, PUC denied NPCC's motion.  After PUC denied NPCC's motion for reconsideration, NPCC appealed to the Oregon Court of Appeals.  The Oregon Court of Appeals dismissed NPCC's interlocutory appeal on September 9, 2010, because NPCC was not seeking review of a "final order" as required under Oregon law.

**C.    Specific PUC Orders at issue in this matter in NPCC's Complaint.**

NPCC contends Qwest has failed to comply with several PUC Orders issued during the above administrative process:  Orders 00-190, 00-191, 06-515, and 07-497 (each is attached as an Exhibit to NPCC's Complaint).  NPCC alleges each of these orders directed Qwest to make certain refunds to ratepayers for tariffs above the NST-compliant rate paid by PSPs such as NPCC's members and that Qwest has not complied.

**III. Procedural Background.**

NPCC filed a complaint in Multnomah County Circuit Court on approximately December 16, 2011.  NPCC brought the action on behalf of the State of Oregon to enforce the benefits of certain final Orders issued by PUC as well as the stipulation between Qwest, PUC, and NPCC (Order 91-1598).  NPCC alleges it may appear on behalf of the State of Oregon under Oregon Revised Statutes §§ 756.180 and 759.455.

According to NPCC, Qwest has failed to pay millions of dollars in refunds to ratepayers.  NPCC asserts six claims on behalf of the State of Oregon:  (1) for contempt against Qwest for failure to comply with PUC Orders 00-190, 00-191, 06-515, and 07-497 and for a permanent injunction against any further violation of PUC orders; (2) for "mandatory relief" ordering Qwest to comply with PUC orders and to pay refunds; (3) for judgment on PUC Orders requiring Qwest to calculate and to pay

9   -  OPINION AND ORDER

refunds in accordance with its settlement obligations; (4) for
civil penalties against Qwest payable to the State of Oregon
pursuant to Oregon Revised Statute § 759.990(6)(c); (5) for
attorneys' fees; and (6) for pre- and post-judgment interest.

        Qwest removed this action to this Court on January 23, 2012,
but NPCC simultaneously filed a Motion (#7) for Partial Summary
Judgment before any scheduling conference was held with the Court
and before discovery.  The Court convened a scheduling conference
on February 13, 2012, at which the Court relieved Qwest of its
obligation to respond to that Motion until further notice and set
a schedule to resolve the then-forthcoming Motion to Remand by
NPCC and Motion to Dismiss by Qwest.  The Court set oral argument
on those Motions for March 19, 2012.

        On March 19, 2012, the Court issued the following Order
(#25) in response to NPCC's Motion (#24) for an extension of
time:

                Presently pending before the Court and
        set for oral argument today (March 19, 2012)
        are [NPCC]'s Motion [#17] to Remand,
        [Qwest]'s Motion [#14] to Dismiss and Motion
        [#22] to Strike [NPCC]'s Response to
        [Qwest]'s Motion to Dismiss.  Late on Friday,
        March 16, 2012, [NPCC] filed its Motion [#24]
        for Enlargement of Time to Respond to
        [Qwest]'s Motion to Dismiss After Due Date.
        Having fully considered all of the written
        arguments as to Motions [#14, #17, and #22],
        the Court does not see anything in the
        existing record to justify [NPCC] bringing
        this matter in the name of the State of
        Oregon, and, for all of the reasons stated by
        [Qwest], the Court is inclined to deny

[NPCC]'s Motion to Remand, grant [Qwest]'s
Motion to Dismiss, and deny as moot [Qwest]'s
Motion to Strike.  Because [NPCC]'s counsel
asserts he has not made a full record on all
of the arguments he wishes the Court to
consider, the Court concludes in the exercise
of its discretion that [NPCC] should be
permitted to complete that record in
opposition to the Motion to Dismiss before
the Court makes final rulings on Motions
[#14, #17, and #22].  Accordingly, the Court
grants in part [NPCC]'s Motion [#24] for
Enlargement of Time as follows:  The Court
strikes today's oral argument; the Court
grants [NPCC] leave to file no later than
April 2, 2012, any new and supplemental
arguments in opposition to the Motion to
Dismiss.  The Court is satisfied the record
is more than complete as to the Motion to
Remand, and, therefore, the Court will not
consider any additional briefing on that
Motion.  Moreover, the Court does not intend
to set the matter again for oral argument.

## QWEST'S MOTION (#22) TO STRIKE

Qwest moves the Court to strike NPCC's Response in

Opposition to Motion to Dismiss (#20) on the grounds that NPCC

did not, in fact, respond to the Motion to Dismiss in its

Memorandum but instead made additional arguments in reply to

Qwest's Response (#19) and in further support of NPCC's Motion to

Remand.

The Court agrees with Qwest's characterization of NPCC's

"Response" (#20) to Qwest's Motion to Dismiss as an unauthorized

reply in support of NPCC's Motion to Remand.  In the exercise of

its discretion, however, the Court has considered the arguments

made by NPCC in docket entry #20.

11  -  OPINION AND ORDER

As noted, the Court stated in its Order (#25) permitting NPCC additional time to supplement the record in response to Qwest's Motion to Dismiss that the Court would not consider additional argument on the Motion to Remand because the record was already complete as to that Motion.  Nevertheless, NPCC, without leave of Court, submitted nearly 20 pages of additional arguments in support of its Motion to Remand in its Corrected and Supplemented Response (#26) to Qwest's Motion to Dismiss.

Although the Court **DENIES as moot** Qwest's Motion (#22) to Strike on this record, the Court also notes its strong disapproval of NPCC's failure to adhere to the Local Rules and to the orders of this Court.  To the extent NPCC or its counsel take similar actions in any future filings, the Court hereby notifies them the Court will summarily strike such filings.

## NPCC'S MOTION TO REMAND

NPCC moves the Court to remand this matter to state court because this Court lacks jurisdiction over NPCC's claims.

## I.    Standards.

28 U.S.C. § 1446(a) provides in pertinent part:  "A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal."  28

U.S.C. § 1446(b) provides in pertinent part:  "The notice of removal of a civil action . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

A motion to remand is the proper procedure for challenging removal. *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007).  The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).  *See also Prize Frieze, Inc. v. Matrix, Inc.,* 167 F.3d 1261, 1265 (9th Cir. 1999), *overruled on other grounds by Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006).  The party seeking removal bears the burden of establishing by a preponderance of the evidence that all removal requirements are met. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).  *See also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

For removal to be valid based on diversity jurisdiction, 28 U.S.C. § 1332(a) "requires complete diversity of citizenship." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  A "core principle of federal removal jurisdiction on the basis of diversity [is] that it is determined (and must exist) as of the time the complaint is filed and removal is effected."

*Strotek Corp. v. Air Transport Ass'n. of Am.*, 300 F.3d 1129,
1131-31 (9th Cir. 2002)(citations omitted).  After "jurisdiction
attaches, a party cannot thereafter, by its own change of
citizenship, destroy diversity.  Nor may the presence of a sham
or nominal party defeat removal on diversity grounds."  *Id*. At
1132 (citations omitted).

## II. Discussion.

NPCC specifically contends the Court should remand this
matter because:  (1) The Court does not have diversity
jurisdiction as alleged in Qwest's Notice of Removal; (2) 28
U.S.C. § 1342 divests this Court of jurisdiction; (3) the appeal
of *NPCC I* deprives this Ccourt of jurisdiction; and (4) Qwest has
made admissions that this Court does not have jurisdiction.

### A.   Judicial Notice.

In its Motion NPCC requests the Court to take judicial
notice pursuant to Federal Rule of Evidence 201 of each of the
documents that the parties stipulated to (#65) in *NPCC I* and that
the Court took notice of in its Opinion and Order (#66) issued on
October 25, 2010.  Qwest does not appear to object to NPCC's
request, and the Court finds it is appropriate to take judicial
notice of those documents in this matter as well.

### B.   Diversity Jurisdiction.

NPCC challenges Qwest's removal of this matter on the basis
of diversity jurisdiction under 28 U.S.C. § 1332, which requires

(1) the amount in controversy to exceed $75,000 and (2) complete diversity of citizenship between the parties.

NPCC maintains this is a "contempt action" and merely an extension of the underlying administrative proceedings at PUC. For purposes of this Court's jurisdiction under § 1332, NPCC, therefore, contends this is not a "civil action," but an action "in the nature of a criminal proceeding." The Court, however, is not persuaded. In its Complaint NPCC seeks judicial enforcement of an agency's orders, requests the Court to use its equitable authority to ensure compliance with those orders, and invokes the Court's statutory authority under state law to penalize noncompliance. In addition, the Court notes contempt exists in both civil law as well as criminal law, and NPCC does not appear to make a claim for criminal contempt in its Complaint that might support NPCC's contention that this is not a "civil" case. In any event, as noted below, NPCC does not provide any basis to proceed here or in state court on a contempt charge against Qwest for failure to adhere to a state administrative agency's order.

Although NPCC also maintains the amount-in-controversy requirement is not satisfied, it is clear in NPCC's Complaint that there are millions of dollars of refunds at stake and up to $50,000 in civil penalties for each of at least four of the alleged violations of PUC orders at issue. NPCC's allegations in its Complaint control the Court's analysis of the amount in

controversy.  *See Guglielmino v. McKee Foods Corp.,* 506 F.3d 696,

699 (9th Cir. 2007).  Thus, NPCC's contention that the monetary

benefits for any such penalties would inure to the State of

Oregon does not alter the fact that NPCC's allegations meet the

first requirement for diversity jurisdiction.

Finally, NPCC correctly notes a state is not a citizen for

purposes of diversity jurisdiction.  *See Dep't of Fair Employment*

*and Housing v. Lucent Tech., Inc.*, 642 F.3d 728, 736-38 (9th Cir

2011).  *See also Cory v. White*, 457 U.S. 85, 88-89 (1982).  NPCC,

therefore, maintains the required diversity of citizenship

between NPCC and Qwest does not exist because NPCC has brought

this action on behalf of the State of Oregon.  Qwest, however,

also correctly notes the Court may look beyond the named party to

determine whether that party's citizenship matters for purposes

of diversity jurisdiction.  *See Lucent*, 642 F.3d at 736-37.  *See*

*also Missouri, Kansas, and Texas Railroad Co. v. Hickman*, 183

U.S. 53, 59-61 (1901).  With respect to a state as a party to a

lawsuit, the Ninth Circuit held in *Lucent*:

> Nevertheless, "the mere presence on the
> record of the state as a party plaintiff will
> not defeat the jurisdiction of the Federal
> court when it appears that the state has no
> real interest in the controversy." *Ex parte*
> *Nebraska*, 209 U.S. 436, 444, 28 S. Ct. 581,
> 52 L. Ed. 876 (1908).  Specifically, the
> Supreme Court has provided that although "the
> State has a governmental interest in the
> welfare of all its citizens, in compelling
> obedience to the legal orders of all its
> officials, and in securing compliance with

all its laws," these "general governmental
interest[s]" will not satisfy the real party
to the controversy requirement for the
purposes of defeating diversity because "if
that were so the state would be a party in
interest in all litigation. . . ." *Mo., Kan.
and Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 60,
22 S. Ct. 18, 46 L. Ed. 78 (1901) ("Missouri
Railway").[FN1]  For this reason, a State's
presence in a lawsuit will defeat
jurisdiction under 28 U.S.C. § 1332(a)(1)
only if "the relief sought is that which
inures to it alone, and in its favor the
judgment or decree, if for the plaintiff,
will effectively operate." *Id.* at 59, 22 S.
Ct. 18; *Navarro Sav. Ass'n v. Lee*, 446 U.S.
458, 460, 100 S. Ct. 1779, 64 L. Ed.2d 425
(1980)("'citizens' upon whose diversity a
plaintiff grounds jurisdiction must be real
and substantial parties to the controversy");
California ex rel. McColgan v. Bruce, 129
F.2d 421, 423 (9th Cir.1942).

> FN1.  In *Missouri Railway*, the
> plaintiffs, citizens of Missouri who
> used a certain bridge, sued a railroad
> company, a citizen of Kansas, because it
> failed to comply with the railroad
> commissioner's rates and charges order.
> 183 U.S. at 58-59, 22 S. Ct. 18.  The
> railroad company attempted to remove the
> lawsuit to federal court, as the
> requirements for diversity jurisdiction
> were satisfied, but the State retained
> the case, reasoning that the State of
> Missouri was the real party plaintiff.
> *Id.*  The Supreme Court, however,
> reversed, holding that judgment would
> effectively operate in favor of only the
> individual plaintiffs, not the state.
> Id. at 59-60, 22 S. Ct. 18.

642 F.3d at 737-38 (footnote omitted).

Here the Court notes NPCC is the party in control of the

litigation and to whom the benefit of this matter inures.  NPCC's

members are some of the PSPs that stand to benefit from Qwest's
refunds as reflected in NPCC's allegation in paragraph 40 of the
Complaint that Qwest owes outstanding refund payments to Oregon
PSPs.  Thus, NPCC's alleged interest in this matter is to ensure
that Qwest complies with PUC's orders and the settlement
agreement to which NPCC and Qwest are parties.

NPCC, nevertheless, asserts its claim for civil penalties
would benefit the State of Oregon alone.  As the Ninth Circuit
held in *Lucent*, however, "a State's presence in a lawsuit will
defeat jurisdiction under 28 U.S.C. § 1332(a)(1) only if the
relief sought is that which inures to it *alone*, and in its favor
the judgment or decree, if for the plaintiff, will effectively
operate."  642 F.3d at 737 (internal quotation omitted)(emphasis
added).  Even if civil penalties are available for NPCC to
pursue, the relief sought by NPCC largely benefits NPCC and its
members and does not inure to the State of Oregon "alone."  The
State's interest in this matter is no more than a mere
governmental interest in ensuring its laws are followed.[1]  Thus,

---

[1] Without relying on it for purposes of resolving the Motion
to Remand, the Court notes Qwest provided a letter from the
Oregon Department of Justice as Exhibit B to the Declaration
(#16) of Lawrence H. Reichman in Support of Qwest's Motion to
Dismiss.  In the letter, the DOJ disclaims any interest in this
matter and informed counsel for NPCC:  "Please be advised that
the State, in particular the [PUC] is not a party in [this
matter] and that the [DOJ] has not appointed you to bring suit on
the State's behalf.  DOJ, therefore, demands you withdraw the
complaint that you have asserted purportedly on behalf of the
PUC."

the Court concludes the State of Oregon is not a real and substantial party to this matter and, for purposes of this Court's jurisdiction only, that NPCC is the real party in interest.

Accordingly, the Court concludes it has jurisdiction over this matter because the amount-in-controversy requirement is met and there is complete diversity between NPCC, the real-party in interest (a citizen of Washington and Oregon), and Qwest (a citizen of Colorado and Louisiana).

## C.    28 U.S.C. § 1342.

NPCC also contends even if the Court has diversity jurisdiction, 28 U.S.C. § 1342 divests the Court of jurisdiction:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
>
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
>
> (2) The order does not interfere with interstate commerce; and,
>
> (3) The order has been made after reasonable notice and hearing; and,
>
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

NPCC contends this Court, therefore, does not have subject-matter jurisdiction over this action because NPCC seeks injunctive and

19  -  OPINION AND ORDER

declaratory relief relating to an order of a public utility.

The Court disagrees.  Although Section 1342 removes the Court's jurisdiction to "enjoin, suspend or restrain the operation of, or compliance with an order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision," NPCC does not request this Court to enjoin, to restrain, to suspend, or otherwise to interfere with a PUC order.  NPCC instead requests the Court to enforce PUC orders that are based on rates PUC previously set, and those orders do not "affect rates chargeable" by PUC.

Accordingly, the Court concludes § 1342 does not divest this Court of jurisdiction over this matter.

**D.   Appellate Jurisdiction.**

NPCC also contends 28 U.S.C. § 1291 divests this Court of jurisdiction because *NPCC I* is currently on appeal to the Ninth Circuit.  NPCC maintains the Court would no longer have jurisdiction over this matter if this Court determines NPCC and its members are the real parties in interest because NPCC's claims in this matter would be identical to the claims NPCC and its members brought in *NPCC I*.

As noted, for purposes of assessing diversity jurisdiction, the Court may look beyond the parties named in the Complaint to determine whether the State of Oregon is a real party in

20  -  OPINION AND ORDER

interest.  Even though the Court finds the State of Oregon is not
a real and substantial party to this dispute for purposes of the
Court's jurisdiction, however, NPCC and its members are not
parties to this matter by any operation of law.  *See Lucent*, 642
F.3d at 738 n.3 ("real-party-in-interest" analysis for purposes
of the Court's diversity jurisdiction is separate from the "real-
party-in-interest" analysis under Federal Rule of Civil Procedure
17(a), and the tests may produce different outcomes).  Thus, the
Court has treated NPCC as the real party in interest only for
purposes of assessing the Court's diversity jurisdiction.  For
purposes of resolving the remaining issues,[2] the Court treats
NPCC as a relator of the State of Oregon as pled and does not
consider NPCC or its members to be the actual party plaintiffs.
Thus, to the extent that NPCC is correct that the claims it now
asserts are identical to those asserted in *NPCC I*, the plaintiff
in this matter is the State of Oregon as pled and 28 U.S.C.
§ 1291 does not divest the Court of jurisdiction.

**E.  Qwest's Admissions.**

Although NPCC asserts various positions taken by Qwest in
this and prior actions constitute to a concession that the state

---

[2] Qwest has not moved the Court to dismiss this matter on
the ground that the State of Oregon is not the real party in
interest under Rule 17.  Qwest merely contends NPCC has failed to
state a claim under Rule 12(b)(6) because NPCC does not have the
legal authority to pursue its claims on behalf of the State of
Oregon.

courts rather than the federal courts have jurisdiction over this matter, this Court's jurisdiction is a matter of law and is not determined on the basis of a party's admissions.  Thus, none of the admissions NPCC attributes to Qwest alter the foregoing analysis of the Court's jurisdiction.

On this record the Court concludes it has jurisdiction over this matter under 28 U.S.C. § 1332, and, therefore, Qwest's removal to this Court was proper.  Accordingly, the Court **DENIES** NPCC's Motion (#17) to Remand.


## QWEST'S MOTION (#14) TO DISMISS

Qwest moves the Court to dismiss each of NPCC's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**I.   Standards.**

> To survive a motion to dismiss, a complaint
> must contain sufficient factual matter,
> accepted as true, to "state a claim to relief
> that is plausible on its face." [*Bell
> Atlantic v. Twombly*, 550 U.S. 554,] 570, 127
> S. Ct. 1955.  A claim has facial plausibility
> when the plaintiff pleads factual content
> that allows the court to draw the reasonable
> inference that the defendant is liable for
> the misconduct alleged.  *Id.* at 556. . . .
> The plausibility standard is not akin to a
> "probability requirement," but it asks for
> more than a sheer possibility that a
> defendant has acted unlawfully.  *Ibid*.  Where
> a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it
> "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

> *Id*. at 557, 127 S. Ct. 1955 (brackets
> omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atlantic v. Twombly*, 550 U.S. 554, 555-56 (2007). When considering a motion to dismiss, the court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir. 2007). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)(citations omitted).

Rule 12(b)(6) provides:

> [When] matters outside the pleading are
> presented to and not excluded by the court,
> the motion *shall* be treated as one for
> summary judgment and disposed of as provided
> in Rule 56, and all parties shall be given
> reasonable opportunity to present all
> material made pertinent to such a motion by
> Rule 56.

There are two exceptions to this rule: The court may consider documents properly attached to the Complaint and documents that are subject to judicial notice because their authenticity cannot be questioned. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## II. Discussion.

Qwest contends the Court should dismiss each of NPCC's claims for failure to state a claim because none of those claims

may be pursued by NPCC on behalf of the State of Oregon.

NPCC contends without any analysis that there are five Oregon laws that permit NPCC to bring its claims on behalf of the State of Oregon:  Oregon Revised Statues §§ 759.455(3), 756.180, 756.160, 756.500, and 756.512.  None of these sections, however, provides NPCC with the right to pursue this matter on behalf of the State of Oregon.  Other than § 759.455, each of the statutes cited by NPCC provides for an action *by* or *made to* PUC.  Sections 759.455(2) and (3) merely provide an "interested party" may make a motion for penalties *with PUC* (or the assigned ALJ) for violations of 47 U.S.C. § 251(f) of the Telecommunications Act.

In addition, as the Oregon DOJ appears to have already instructed NPCC,[3] Oregon Revised Statute §§ 180.220(1) and (2) provide the Oregon DOJ "shall have . . . [g]eneral control and supervision of all civil actions and legal proceedings in which the State of Oregon may be a party or may be interested. . . . No state officer, board, or commission, or the head of a department or institution of the state shall employ or be represented by any other counsel or attorney at law."

---

[3] As noted, Qwest provided the Court with a copy of a January 31, 2012, letter from the Oregon DOJ to NPCC's Counsel, Franklin G. Patrick, informing him of the lack of statutory authority for NPCC to pursue this matter on behalf of the State of Oregon or PUC and stating the DOJ's position that counsel has misrepresented his authority to pursue this claim to the state court and to this Court.  Although the Court does not consider the letter in reaching its resolutions of the pending Motions, the Court takes note of the legal authority cited by the DOJ.

Moreover, the only Oregon statute that appears to provide any form of a private right of action is Oregon Revised Statute § 756.500 under which "[a]ny person may file a complaint before the Public Utilities Commission . . . against any person whose business or activities are regulated by some one or more of the statutes, jurisdiction for the enforcement or regulation of which is conferred upon by the commission." Or. Rev. Stat. § 765.500(1). Oregon law, however, does not appear to provide any private right of action to enforce PUC orders other than the administrative process.

Although the Court provided NPCC with additional time to file responsive briefs, NPCC has not addressed the specific arguments raised by Qwest as to each of NPCC's claims. As discussed below, the legal grounds on which NPCC may pursue any of its claims on behalf of the State of Oregon for purposes of enforcing the orders of an administrative body of the State remain unclear.

**A.   First Claim:  Contempt.**

Qwest contends NPCC's claim for contempt should be dismissed on the grounds that (1) a claim for contempt under Oregon law arises solely for violations of a court order; (2) even if NPCC's contempt claim is actionable, it may only be pursued in the proceeding to which the contempt relates; and (3) the claim is barred by the statute of limitations.

25  -  OPINION AND ORDER

Qwest points out that Oregon law has a statutory scheme for "contempt proceedings" that NPCC does not reference in its briefs or in its Complaint. *See* Or. Rev. Stat. §§ 33.025-33.155. Those statutes, however, provide only for contempt of a court order or judgment and do not provide a claim for violation of an agency order. *See* § 33.015(1)(b). In any event, § 33.055(3) requires any contempt action to be brought "in the proceeding to which the contempt is related." Thus, any such claim must be pursued with PUC for violations of its orders. Finally, Oregon places a two-year statute of limitations on contempt claims. *See* §§ 33.135(1), 33.065. As set out in paragraphs 33 through 42 in NPCC's Complaint, the latest PUC order that NPCC seeks to enforce was issued in late 2007, at which time NPCC contends Qwest knew the precise amounts required to satisfy PUC orders based on the final determination of NST-compliant rates. In any event, NPCC's Complaint was filed approximately four years later.

Thus, the Court dismisses NPCC's First Claim for contempt on these bases.

**B.   Second Claim:  Enforcement of PUC Orders.**

Qwest notes Oregon provides PUC with the authority to seek state-court enforcement of its orders under Oregon Revised Statute § 756.180, but the statute does not provide for another entity to invoke that authority on PUC's behalf. Although NPCC

relies on § 756.180 to support its Second Claim, NPCC,

nevertheless, asserts PUC does not have the right to enforce its

own orders.  Section 756.180(1), however, provides in relevant

part:

> Whenever it appears to the Public Utility
> Commission that any public utility or
> telecommunications utility or any other
> person subject to the jurisdiction of the
> commission is engaged or about to engage in
> any acts or practices which constitute a
> violation of any statute administered by the
> commission, or any rule, regulation,
> requirement, order, term or condition issued
> thereunder, the commission may apply to any
> circuit court of the state where such public
> utility or telecommunications utility or
> other person subject to the jurisdiction of
> the commission operates for the enforcement
> of such statute, rule, regulation,
> requirement, order, term or condition.

In any event, NPCC does not cite any legal authority for the

proposition that NPCC (or the State of Oregon for that matter)

may exercise PUC's right to seek to enforce its own orders in

state court.  The statute does not appear to create a private

right of action, and the Oregon Court of Appeals has held a

statute providing for agency enforcement of its orders does not

create such a right.  *See Stout v. Citicorp Indus. Credit*, 102

Or. App. 637, 640-42 (1990)(empowerment of BOLI enforcement of

wage laws does not create a private right of action).

Qwest further argues NPCC fails to state a claim because

NPCC did not plead, as the statute requires, that it "appears to

the Public Utility Commission that any public utility or

27  -  OPINION AND ORDER

telecommunications utility" is in violation of an order.

Qwest also asserts NPCC has not exhausted its available administrative remedies because it has not asked PUC to rule on these matters.

The Court concludes Oregon Revised Statute § 756.180 does not provide NPCC with the right to bring to a claim on behalf of PUC or the State of Oregon to enforce PUC orders.

### C.    Third Claim:  Judgment on PUC Orders.

Qwest also contends there is not any legal authority for NPCC to seek a judgment in any court on the basis of PUC's orders in light of the fact that NPCC does not have any authority to pursue this matter on behalf of PUC.  Oregon Revised Statute § 180.060 provides the Oregon Attorney General with the general authority to represent and to pursue an action on behalf of state agencies.  In any event, NPCC maintains it is not asserting its claims on behalf of PUC, but on behalf of the State of Oregon. As noted, however, Oregon Revised Statutes §§ 180.220(1) and (2) provide that authority to the Oregon DOJ exclusively.

### D.    Fourth Claim:  Civil Penalties.

In addition to its arguments that NPCC does not have the authority to pursue claims on behalf of the State of Oregon, Qwest specifically contends NPCC does not have the authority to bring a claim for civil penalties on behalf of the State under Oregon Revised Statute § 759.990.  As Qwest points out, Oregon

Revised Statute § 756.160 sets out a scheme for enforcement of statutes and ordinances relating to public and telecommunications utilities (including PUC's "rules regulations, orders, [and] decisions") through coordination between PUC and the Oregon Attorney General.  Or. Rev. Stat. §§ 756.160(1), (2).  Thus, Qwest contends and the Court agrees NPCC cannot state a claim under § 759.990 for civil penalties against Qwest on behalf of the State of Oregon.

 **E.   Fifth and Sixth Claims:  Attorneys' Fees and Interest.**

 Qwest also maintains NPCC's "claim" for attorneys' fees does not state a claim and should be dismissed.  Qwest notes NPCC fails to cite any statute or contract that authorizes an award of fees.  To the extent that NPCC seeks attorneys' fees incurred in *Northwest Public Communications Council v. Public Utilities Commission of Oregon* before the Oregon Court of Appeals (which was ultimately decided in 2004), NPCC's claim fails because it was required to assert any claim for attorneys' fees long ago in that proceeding.  In addition, NPCC fails to state separate claims for relief for attorneys' fees and pre-judgment interest in connection with its claims before this Court.  Qwest notes when attorneys' fees and pre-judgment interest are authorized, they may be allowed by the court after a party prevails on a substantive claim.  They are not, however, the proper subject of a separate "claim for relief" in a complaint.  *See* Fed. R. Civ.

29  -  OPINION AND ORDER

P. 54(d)(2)(a claim for attorneys' fees is to be made by motion).

In summary, after reviewing the statutes that NPCC relies on to support its position that it may pursue claims on behalf of the State of Oregon, the Court concludes NPCC has failed to state a claim.  The Court, therefore, dismisses NPCC's Complaint in its entirety.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** NPCC's Motion (#17) to Remand, **DENIES as moot** Qwest's Motion (#22) to Strike, **GRANTS** Qwest's Motion (#14) to Dismiss, and **DISMISSES** this matter in its entirety.  Accordingly, NPCC's deferred Motion (#7) for Partial Summary Judgment is hereby **moot.**

IT IS SO ORDERED.

DATED this 28th day of June, 2012.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge